**William C. BULLARD, Sr., Plaintiff,**

v.

**Robert E. CONNOR, acting in his capacity as Director of the Federal Emergency Management Agency, and the Federal Emergency Management Agency, Defendants.**

**No. 87 C 8128.**

United States District Court,
N.D. Illinois, E.D.

April 4, 1989.

Ronald S. Samuels, Patrice Ball–Reed, Washington, Kennon, Hunter & Samuels, Chicago, Ill., for plaintiff.

Mark A. Flessner, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff, William C. Bullard, filed this lawsuit to recover under a flood insurance policy issued to him by the defendants, the Federal Emergency Management Agency ("FEMA") and its director, Robert E. Connor. Jurisdiction is based on 42 U.S.C. § 4072.[1] FEMA has moved for summary judgment on the ground that Bullard did not file a signed proof of loss form within 60 days after the damage occurred as required by the insurance policy. Currently pending before the Court are defendants' objections to the Magistrate's Report and Recommendation ("Report") that the defendants' motion be denied. For the reasons stated below, the Court declines to adopt the Report and grants defendants' motion for summary judgment.

### II. FACTS

Bullard owns a house in Bellwood, Illinois. On May 6, 1986, FEMA issued a Standard Flood Insurance Policy ("SFIP") to Bullard which was in force for one year.[2] The policy requires that a sworn proof of loss form be filed within 60 days of a loss.[3]

---

1. Bullard states that this action is brought under 42 U.S.C. § 4021, but that section has been superceded by 42 U.S.C. § 4072. Pub.L. 93–234, Title II, § 203, December 31, 1973, 87 Stat. 982.

2. The policies submitted by Bullard and the defendants are not the same, but there is no difference in the pertinent provisions. All refer-

ences are to the policies submitted by Bullard. The relevant terms of the policy are also found in 44 C.F.R. § 61, App. A(1) (1982).

3. SFIP, Article VIII, para. I 4 provides:
   Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy

The policy further provides that no suit may be brought unless the policyholder has complied with all of the requirements of the policy.[4]

Plaintiff incurred a loss due to flooding on October 3, 1986. On October 20, 1986, FEMA received Bullard's Notice of Loss, a preliminary notification, which claimed $14,500 in damages and contained a list of allegedly damaged property.[5] The list failed to specify values for any of the individual items. On October 21, 1986, William McCain, an adjuster hired by FEMA, inspected Bullard's property. According to FEMA, the adjuster investigated the loss, formulated a proof of loss showing a net claim of $844.00, and presented it to Bullard for signature. After he consulted with his insurance agent and the adjuster, Bullard refused to sign the proof of loss. The adjuster then submitted the unsigned proof of loss to FEMA. Bullard states that the agent neither tendered anything for him to sign nor indicated that a proof of loss was necessary.

On October 22, 1986, FEMA sent a letter to Bullard informing him that under the terms and conditions of the policy, Bullard

> signed and sworn to by you and furnishing us with the following information: ,
> a. The date and time of the loss,
> b. A brief explanation of how the loss happened,
> c. Your interest in the property damaged (for example, "owner") and the interests, if any, of others in the damaged property,
> d. The actual cash value of each damaged item of insured property (unless the policy's "REPLACEMENT COST PROVISIONS" apply, in which case the replacement cost without allowance for depreciation should be furnished) and the amount of damages sustained,
> e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property,
> f. Details as to any other contracts of insurance covering the property, whether valid or not,
> g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued,
> h. Details as to who occupied any insured building at the time of loss and for what purpose, and
> i. The amount you claim is due under this policy to cover the loss including statements concerning:

had 60 days from the date of loss to provide a signed proof of loss. The letter also stated that failure to submit a proof of loss form would jeopardize his right of recovery under the terms of the policy. Bullard denies having received this letter.

In a letter to Bullard dated November 12, 1986, James Napier, a FEMA claims examiner, stated that the unsigned proof of loss from October 21, 1986 had been modified because the stated loss did not reflect the actual cash value of the items damaged. The letter enclosed a second proof of loss for $528.28 and informed Bullard that if he wished to accept this amount for the settlement of his claim, he should sign and return this proof of loss. Bullard contends the November 12th letter implied that he needed to sign the proof of loss only if he agreed to the stated dollar amount and that he did not need to submit a proof of loss if he disputed the amount.[6] Bullard never submitted a signed proof of loss. In a letter dated February 6, 1987, FEMA informed Bullard that his file was being closed without payment because a proof of loss had not been filed by December 3, 1986.

> (i) The limits of coverage stated in the policy,
> (ii) The cost to repair or replace the damaged property (whatever costs less).

4. SFIP, Article VIII para. Q provides:
> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy.

5. SFIP, Art. VIII, para. I 1 provides that in the event of a loss, the insured must "[n]otify us in writing as soon as practicable...."

6. The letter of November 12, 1986 stated:
> We enclose a proof of loss in the amount of $528.28 in settlement of the captioned claim. The unsigned original Proof of Loss was previously rejected as we did not feel that the amount reflected the actual cash value of the items damaged. If you are willing to accept the amount on the enclosed Proof of Loss, we kindly ask that you sign the Proof of Loss where indicated by an "X". (It is not necessary that your signature be witnessed by a Notary Public). Please return the form promptly so that we can proceed with the settlement of your claim. A stamped self-addressed envelope is enclosed for your convenience. We enclose a copy of the worksheet.

Bullard contends that FEMA is estopped from denying his claim because of the affirmative conduct of its agents. Bullard bases this argument on FEMA's alleged failure to inform him of the status of his case and the fact that FEMA's letter of November 12th failed to indicate the continued need for a sworn proof of loss.

The Magistrate concluded that, under the facts of the case, the plaintiff could reasonably interpret the government's actions as an indication that a sworn proof of loss was no longer required, thereby estopping the government from relying on the 60–day requirement for the proof of loss. The Magistrate relied on FEMA's alleged failure to inform Bullard that additional information was necessary and found that FEMA's letter of November 12, 1986 could reasonably be interpreted as indicating that no further information was necessary.

Pursuant to 28 U.S.C. § 636(b)(1), the parties filed responses to the Magistrate's Report. FEMA argues that the Report is inconsistent with controlling Supreme Court precedent which has established a stringent test for applying estoppel against the government and that estoppel is not appropriate in this case. Bullard contends that genuine issues of material fact remain on the question of estoppel and thereby preclude summary judgment. Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a *de novo* review of the entire record before the Magistrate.

### III. DISCUSSION

Traditionally, courts did not allow estoppel to lie against the federal government or its agencies. *Azar v. United States Postal Service*, 777 F.2d 1265, 1269 (7th Cir.1985). While this absolute bar has been relaxed to some extent, the concerns underlying this rule continue to exist. In *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), the United States Supreme Court stated:

When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in

obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

In *Community Health Services,* the Court held that the Government was not estopped from recouping overpayment of employee wages paid from a Comprehensive Employment and Training Act grant. The Court left open the issue of whether estoppel ever applies to the Government. 467 U.S. at 60, 104 S.Ct. at 2224. At the very least, however, the Court stated that the Government may not be estopped on the same terms as any other litigant and concluded that "[p]rotection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds." 467 U.S. at 63, 104 S.Ct. at 2225.

Courts have consistently denied recovery when claimants fail to comply with proof of loss requirements found in their insurance policies issued under federal programs. *Strick v. Pierce*, 607 F.Supp. 445, 447 (N.D. Ill.1985). If the Government is subject to estoppel, it is only in "narrow exceptions" where the Government engages in affirmative conduct which would render adherence to the strict procedural requirements inequitable. *Strick*, 607 F.Supp. at 477. In *Community Health Services*, 467 U.S. at 61, 104 S.Ct. at 2224, the Court found that "however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of estoppel are present."

In *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir.1982), the Seventh Circuit set forth the following requirements for determining the application of estoppel to an agency of the federal government: (1) the party to be estopped must know the true facts; (2) this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it so intended; (3) the party

asserting estoppel must have been ignorant of the true facts; and (4) the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury. *See also Azar*, 777 F.2d at 1268.

■ In applying the test for estoppel to the present case, there is no dispute with respect to the first requirement. The government clearly knew that a sworn proof of loss was required within 60 days of the date of loss. The second requirement necessarily involves a question of fact. Drawing the factual inferences in favor of Bullard, he could have relied on FEMA's alleged failure to send notice that a sworn proof of loss was still necessary (see discussion of October 22, 1986 letter, *supra* at 1083 and its letter of November 12, 1986 as indicating that no further information was required. Thus, the second element of the test is resolved in Bullard's favor.

The fourth element of the test involves the difficult inquiry of reasonable reliance. As pointed out in *Azar*, 777 F.2d at 1269, in making a determination of reasonableness, the facts must be applied to an objective legal principle. While the SFIP clearly provides that Bullard may not rely on the actions of the adjusters in computing his claim,[7] this fact is not determinative. The inquiry is whether "the complaining party acted *reasonably* when he relied on those he now seeks to estop rather than employing some other means to obtain the information." *Id.* at 1270 (emphasis in original). In the present case, Bullard has presented enough facts to allow a jury to find that such reliance was reasonable. Furthermore, such reliance resulted in the denial of Bullard's claim. Thus, Bullard has presented sufficient evidence of reasonable reliance and substantial injury to satisfy the fourth requirement.

■ The third requirement, that of Bullard's ignorance of the 60-day requirement, is critical to this case. This element involves a solely factual inquiry; it does not require a reasonableness inquiry. *Azar*, 777 F.2d at 1269. There is no construction of the facts which would permit the inference that plaintiff was ignorant of the proof of loss requirement. Indeed, plaintiff has not argued that he was ignorant of the proof of loss requirement; rather, he argues only that defendant's conduct precludes reliance on the 60-day proof of loss requirement. Bullard possessed a copy of the policy which set forth the proof of loss requirement in explicit detail. Further, Bullard is charged with knowledge of the contents of his policy, which are published in the Code of Federal Regulations (44 C.F.R. § 61.1, *et seq.* (1987)).[8] *See Community Health Services*, 467 U.S. at 63, 104 S.Ct. at 2225 ("those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law"); *Phelps v. Federal Emergency Mgmt. Agency*, 785 F.2d 13, 17 (1st Cir.1986) ("all citizens are expected to know the law, however arcane."). The third element must therefore be resolved against the plaintiff, thus de-

7. Article VIII, para. I(5) of the policy provides: The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you to complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it. In completing the proof of loss, you must use your own judgment concerning the amount of loss and the justification of that amount; the adjuster is not authorized to approve or disapprove claims or tell you whether your claim will be approved by us.

8. Similarly, although the parties did not raise the issue in their briefs, there can be no ques-

tion of waiver. Both the insurance contract and the federal regulations provide the SFIP "cannot be amended nor any of its provisions be waived without the express written consent of the Federal Insurance Administrator." SFIP, art. VIII para. D, *see* 44 C.F.R. § 61.13(d) (1982) ("no provision ... shall be altered, varied or waived other than through the issuance of an appropriate amendatory endorsement, approved by the [Federal Insurance] Administrator as to form and substance for uniform use"). There was no such consent, and thus no waiver, in this case. In addition, this requirement cannot be constructively waived. *See, e.g., Wagner v. Director, Federal Emergency Mgmt. Agency*, 847 F.2d 515, 519 (9th Cir.1988); *Phelps v. Federal Emergency Mgmt. Agency*, 785 F.2d 13, 19 (1st Cir.1986).

feating his estoppel claim under the four-part test set forth in *Portmann.*

The Seventh Circuit has suggested that a party seeking to assert estoppel against the government may also have to meet a fifth requirement, a showing of affirmative misconduct. *Portmann,* 674 F.2d at 1167; *Azar,* 777 F.2d at 1270–71. While the court in *Azar* held that a showing of affirmative misconduct was not necessary to prove estoppel, it emphasized that its holding was limited to "the unique situation in which a party seeks to estop the Postal Service from relying on the Express Mail insurance limits." *Id.* at 1271. In the Ninth Circuit, a party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence. *Wagner v. Director, Federal Emergency Mgmt. Agency,* 847 F.2d 515, 519 (9th Cir.1988). In *Wagner,* the claimant sought to estop FEMA from relying on the proof of loss requirement. The court concluded that "a mere failure to inform or assist does not justify application of equitable estoppel." *Id.,* quoting *Lavin v. Marsh,* 644 F.2d 1378, 1384 (9th Cir. 1981). As in *Wagner,* Bullard bases his estoppel claim on FEMA's failure to remind him of the terms of his policy. It cannot be said that a failure to inform falls below "some minimum standard of decency, honor, and reliability" as would justify a finding of estoppel against the Government. *Community Health Services,* 467 U.S. at 61, 104 S.Ct. at 2224. *See also Phelps,* 785 F.2d at 18–19 (a FEMA agent's advice that the claimant need not file a written report was insufficient to estop the government). Were this Court to accept the Ninth Circuit's test, Bullard would not be able to satisfy the requisite showing of affirmative misconduct.

In reaching his decision, the Magistrate relied primarily on the Seventh Circuit's decision in *Meister Brothers, Inc. v. Macy,* 674 F.2d 1174 (7th Cir.1982). In *Meister Brothers,* the claimant entered into a series of prolonged negotiations with the FEMA adjuster over the value of his claim. The claimant failed to execute a proof of loss until three months after the deadline for filing but, upon receipt of the proof of loss, FEMA paid a portion of the claim. Negotiations continued unsuccessfully on the value of the unpaid portion of the claim, and after the claimant filed suit, FEMA invoked the 60-day proof of loss requirement as a defense to any further liability. In finding that the government was estopped, the court relied chiefly on the fact that FEMA had already paid a portion of the claim prior to invoking the proof of loss requirement. The court noted that FEMA had the necessary information provided in a proof of loss and concluded that "the actions of paying part of the claim under a policy which the insurer has treated as being fully applicable to the entire claim, over many months of time, does not permit a withdrawal thereafter from the position clearly and unambiguously taken." *Meister Bros.,* 674 F.2d at 1177. In *Meister Brothers,* the court emphasized that its decision was limited to the unique facts of the case and was not intended to provide an appropriate standard for resolution of future cases. *Id.*

The Court concludes that *Meister Brothers* is inapplicable to the present case.[9] Unlike the situation in *Meister Brothers,* FEMA has not paid any portion of Bullard's claim, nor did it discuss the claim with Bullard after the deadline had passed for the sworn proof of loss. In fact, FEMA stated in its letter of February 6 that the reason the file was closed was because of Bullard's failure to provide a proof of loss. In addition, despite Bullard's contention that FEMA has received the necessary information for processing his claim, he has failed to provide FEMA with the information which would have been provided by a sworn proof of loss. If the necessary information from the proof of loss had actually been provided as it was in

---

**9.** As the Magistrate recognized, the First Circuit has concluded that *Meister Brothers* is inconsistent with the Supreme Court's decision in *Community Health Services. Phelps,* 785 F.2d at 17; *see also Wagner,* 847 F.2d at 18–20. However, because *Meister Brothers* is inapplicable to the present case, there is no need to address the continuing validity of *Meister Brothers.*

*Meister Brothers*, this dispute may have been averted.

 The information provided by the Notice of Loss was insufficient for at least two reasons: (1) The list submitted by Bullard contained only one total dollar amount and failed to specify values for any of the items; and (2) Bullard failed to provide a sworn statement. The terms of the policy specifically require that a proof of loss include the actual cash value of each damaged item.[10] Further, even had the defendants received the information required in the proof of loss, this would not obviate the need for a sworn statement as required by Article VIII of the SFIP. Plaintiff failed to swear under penalty of perjury concerning the truthfulness of the information provided. This requirement is important because it ensures that the plaintiff has carefully considered the information submitted to the government. *See Strick*, 607 F.Supp. at 447. Thus, unlike *Meister Brothers*, in the present case FEMA did not pay any portion of the claim, it did not discuss the claim after the deadline had passed for the proof of loss, and it did not receive the information which would have been provided in a proof of loss.

### IV. CONCLUSION

Plaintiff failed to submit a sworn proof of loss within the required 60–day time period as is required in order for him to recover. Furthermore, plaintiff's estoppel argument against the government fails because he was not ignorant of the proof of loss requirements set forth in his policy. Because there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law, summary judgment is granted in favor of defendants and against plaintiff.

---

10. *See* SFIP, Article VIII, para. I(4d), *supra* n. 3.