Joan Marie **GAGLIARDI**, Elisa D. Gagliardi, and Estate of Louis J. Gagliardi, Plaintiffs,

v.

The **OMAHA PROPERTY AND INSURANCE COMPANY**, A Mutual of Omaha Company, Defendant.

Civil Action No. 96–cv–1766.

United States District Court, D. New Jersey.

Feb. 4, 1997.

David A. Stefankiewicz, Wildwood, NJ, for Plaintiffs.

Mark W. Catanzaro, Moorestown, NJ, for Defendant.

## OPINION

BROTMAN, District Judge.

This property damage action arises under the National Flood Insurance Act of 1968 (hereinafter "NFIA"), 42 U.S.C. §§ 4001 *et seq.*[1] Plaintiffs seek to recover losses sustained as a result of a flood which allegedly occurred on March 3, 1994 and damaged plaintiffs' properties in Avalon, New Jersey. Plaintiffs claim that these losses are covered by an insurance policy issued pursuant to section 4053 of the NFIA by defendant The Omaha Property and Casualty Insurance Company.[2]

Presently before the court is Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. Defendant argues that plaintiffs' non-compliance with the policy— namely, their failure to file a sworn proof of loss form within 60 days from the date of the loss—bars the present action to recover under the insurance policy and entitles defendant to summary judgment. Plaintiffs, in turn, contend that they complied substantially with the requirements of the policy and that defendant waived both the requirement of filing a proof of loss form and the time requirement set forth in the policy. As a result, plaintiffs argue that defendant is estopped from relying on the policy defense.

---

1. Plaintiffs filed this action in the Superior Court of New Jersey, Law Division, Cape May County. Defendant subsequently removed the action to this court pursuant to 42 U.S.C. § 4053 and 28 U.S.C. § 1441, *et seq.*

2. 44 C.F.R. § 61.13(f) (1997) provides that private insurers, also known as "Write–Your–Own" (WYO) property insurance companies, may issue federal flood insurance policies under the NFIA.

## I. BACKGROUND

On December 21, 1993, The Omaha Property and Casualty Insurance Company (hereinafter "Omaha") issued two one-year flood insurance policies to the plaintiffs covering two separate properties at 2475 Ocean Drive in Avalon, New Jersey. Both policies are Standard Flood Insurance Policies (hereinafter "SFIPs") as set forth at 44 C.F.R. § 61 App. A(1) (1997). On March 3, 1994, a storm caused flooding which, in turn, damaged plaintiffs' insured properties. Pursuant to the Notice of Loss provisions in the policies, plaintiffs advised defendant of their flood-related losses.

A representative of Omaha's adjusting company, Valco–U.S.A., inspected plaintiffs' properties on March 13, 1994. Thereafter, plaintiffs received proof of loss forms and final reports for their signature. Because plaintiffs disputed the adjuster's calculation of their losses, they did not sign or return to Omaha the proof of loss forms. To date, in fact, plaintiffs have not submitted to Omaha a proof of loss form.

The policies in question require an insured to submit to the carrier within 60 days after the loss a proof of loss statement detailing the items and amounts claimed, as well as other specific information as listed in the policy. (D. Brief Exh. C at 6–7.) In plaintiffs' case, the Gagliardis had until on or about May 3, 1994 to submit their proof of loss to Omaha.

On April 21, 1994, the defendant mailed to plaintiffs a letter reminding plaintiffs of their obligation to file a formal proof of loss within 60 days from the date of the loss. (D. Brief Exh. E.) Ten days later, on May 2, 1994, defendant's adjuster (Valco–U.S.A.) mailed to plaintiffs a similar letter advising plaintiffs that their claim could not proceed unless they forwarded to Omaha a signed proof of loss. (D. Brief Exh. F.) Plaintiffs did not file a proof of loss; rather, Joan Marie Gagliardi notified Omaha on May 5, 1994 that plaintiffs required 45 additional days to file the required documentation. (D. Brief Exh. G.) On June 9, 1994, Omaha advised plaintiffs that it had still not received a proof of loss, but that it would consider payment of their claim if plaintiffs forwarded the loss statement by June 20, 1994. (D. Brief Exh. H.) [3]

On July 14, 1994, the defendant advised plaintiffs that Omaha had closed plaintiffs' file without payment for lack of interest and failure to comply with the policy's requirements regarding proof of loss. (D. Brief Exh. I.) The defendant sent plaintiffs another letter on September 6, 1994 advising them that their file had been closed because plaintiffs had never submitted a final proof of loss to either the adjuster or Omaha. (D. Brief Exh. J.)

Defendants have denied plaintiffs' claim for insurance coverage on the grounds that they did not comply with the provisions in the policies requiring them to submit documentation regarding proof of loss, as detailed in Article VIII, para. I of the policies. (See D. Brief Exh. C at 6–7.) Further, according to Article VIII, para. Q of the policies, plaintiffs may not file a lawsuit to recover monies unless they have complied with all policy requirements. (See D. Brief Exh. C at 7.) In light of plaintiffs' non-compliance with the proof of loss requirements, after plaintiffs brought the instant action, the defendants filed the present motion for summary judgment.

## II. DISCUSSION

### A. The Summary Judgment Standard

The standard for granting summary judgment is a stringent but not insurmountable one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Serbin v. Bora Corp., 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. Serbin, 96 F.3d at 69 n. 2. The threshold inquiry is whether there are "any genuine factual

---

3. The court notes that June 20, 1994 was 45 days after May 5, 1994, the date on which plaintiffs requested 45 additional days to file the proof of loss.

issues that properly can be resolved only by a finder of fact because they may reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. National Westminster Bank of New Jersey,* 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin,* 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. Failure to File a Proof of Loss

Plaintiffs admit that they never filed a formal proof of loss as required by the insurance policy covering their properties. Thus, there is no genuine issue of material fact as

to plaintiffs' failure to submit a sworn proof of loss to the defendant.

■ Plaintiffs argue, however, that they substantially complied with the policy's requirements by submitting to defendant detailed estimates regarding their losses. (Pl. Aff. ¶¶ 7, 8, 12; Pl. St. of Facts ¶ 18.) They contend that holding them to the strict letter of the law—here, the precise language of the policy—would promote "form over substance" and create an unjust result. The law, however, counsels otherwise. Insurance policies issued under federal programs must be strictly construed. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Wagner v. FEMA,* 847 F.2d 515, 518 (9th Cir.1988) (citing 332 U.S. 380, 68 S.Ct. 1) (conditions of insurance policy offered pursuant to congressionally mandated program must be strictly observed); *Cross Queen, Inc. v. FEMA,* 516 F.Supp. 806, 809 (D.V.I.1980).

■ Moreover, any injustice that may result from summary judgment will derive from the plaintiffs' own knowing inaction in pressing and presenting properly their claim.[4] Plaintiffs themselves aver that the defendant and its adjuster notified them several times of the need to file a proof of loss form according to the terms of the insurance policy. These notices also informed plaintiffs of the ramifications of *failure* to file such proof forms—namely, that plaintiffs could not bring suit against the defendant without complying with the policy's requirements. In the face of abundant notice, then, plaintiffs should have known that the estimates they claim to have submitted to the defendant did not suffice to comply with the policy requirements. Put another way, defendant's repeated written notifications should have alerted plaintiffs that defendant lacked information otherwise contained in a proof of loss

---

4. Plaintiffs claim that they did not have a copy of the insurance policy until the defendant made it available after litigation had commenced. They suggest that they therefore did not know that the policy required a formal proof of loss. The law, however, charges plaintiffs with such knowledge. *See McCrary v. FEMA,* 642 F.Supp. 544, 548 & n. 3 (E.D.N.C.1986). Further, the court finds plaintiffs' argument somewhat specious in light of

other actions they took—prior to the litigation—in an apparent effort to comply with other policy requirements. For instance, plaintiffs advised the defendants of the loss "pursuant to the Notice of Loss provisions ... in the policy." (Pl. St. of Facts ¶ 4.) Plaintiffs also separated the damaged items and made them ready for defendant's inspection "as per the requirements of the policy." *Id.* ¶ 5.

statement but evidently not provided by plaintiffs' submissions.[5] At all events, this court's obligation to construe strictly the terms of a federally sponsored insurance policy requires it to reject plaintiffs' substantial compliance argument.

### C. Waiver

Plaintiffs contend that despite their failure to submit a formal proof of loss statement, defendant cannot rely on this complete defense because defendant waived the requirement. Plaintiffs assert that the defendant's representatives advised plaintiffs, both orally and in writing, that their claim would be reopened and considered if plaintiffs would submit more detailed information regarding their claim. Plaintiffs also emphasize that their file in fact remained open beyond both the 60 day period set forth in the policy and the extended deadline set by the defendant in its June 9, 1994 letter. They argue that this establishes that Omaha waived the time limit that would have required the Gagliardis to file the proof of loss statement on or about May 3, 1994.

The Third Circuit has not yet ruled on whether plaintiffs' failure to file a proof of loss bars completely their subsequent claim against a private insurance company that issued a federally sponsored insurance policy. A review of countless opinions from courts in this circuit and others, moreover, indicates widespread disagreement on this issue. Compare Schumitzki v. FEMA, 656 F.Supp. 430, 432 (D.N.J.1987) (Gerry, J.) (citations omitted) ("[N]umerous courts [in this circuit] have held ... failure to comply with the proof of loss requirement of a federal insurance policy bars a subsequent action....") with Conrad v. Omaha Property & Cas. Ins. Co., No. CIV. A. 94–4087, 1995 WL 350418, *4 (E.D.Pa.1995) (concluding that failure to comply strictly with proof of loss requirement does not bar claim). Similarly, courts are not in unison in determining whether a private insurer, by its representatives' conduct, can waive a federally sponsored insurance policy provision such as the proof of loss

requirement. This court's analysis will begin with a plain reading of the plaintiffs' SFIP, the federal statute pursuant to which it was issued, and the regulations promulgated in furtherance of the federal statute.

As a preliminary matter, the SFIP establishes that federal law governs this action. In specific, Article X of plaintiffs' policy provides that "[t]his policy is governed by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. § 4001, et seq.) and Federal common law." (See D. Brief Exh. C at 8.) The regulations corresponding with the NFIA also indicate that federal law applies in this matter. See, e.g., 44 C.F.R. § 61.4 (1997) (all flood insurance made available under National Flood Insurance Program [hereinafter "NFIP"] subject to (1) statutes authorizing NFIP, their Amendments, and Regulations issued under them; (2) terms and conditions of SFIP); Id. § 61.5(e) (1997) (SFIP authorized only under terms and conditions established by Federal statute, NFIP's regulations, Administrator's interpretations, and express terms of policy).

■ Addressing plaintiffs' argument that defendant waived the requirement to file a proof of loss, the court notes first that general doctrines of waiver do not apply when the insurer is an agency of the United States. Cross Queen, Inc., 516 F.Supp. at 809 (noting that non-compliance with requirement of policy issued under federal program almost always bars recovery); Continental Imports, Inc. v. Macy, 510 F.Supp. 64, 66 (E.D.Pa.1981) (rejecting waiver argument, granting summary judgment). While the court recognizes that the defendant is not such an agency, it cannot ignore that the flood insurance policy Omaha issued to plaintiffs provides federally sponsored coverage pursuant to federal law. Thus, where that policy and the federal law from which it derives delimit waiver, the court must conclude that general waiver doctrine usually applicable in insurance cases is inapposite here.

---

5. The court notes that plaintiffs have not provided copies of any of the documents they claim to have forwarded to the defendant. Thus, even if the court could adopt a substantial compliance standard, plaintiffs' mere allegations regarding substantial compliance—without more—would not allow a reasonable jury to find that, in fact, plaintiffs had satisfied the policy's requirements.

■ In this case, plaintiffs' SFIP states clearly that the policy "cannot be amended nor can any of its provisions be waived without ... express written consent." (*See* D. Brief, Exh. C, at 5.) Moreover, that section of the policy also advises the insured that actions of the insurer will not constitute a waiver of the insurer's rights. *Id.* The regulations, too, make clear that oral assurances or actions of the insurer's representatives or agents cannot operate to waive a provision of the policy. *See, e.g.,* 44 C.F.R. § 61.5(e) (representations regarding extent and scope of coverage not consistent with NFIA or SFIP are void); *Id.* § 61.13(d-e) (no provision of SFIP shall be altered, varied, or waived other than by the express written consent of the Administrator.... no oral binder or contract shall be effective; no written binder effective unless issued with express authorization of Administrator).

Plaintiffs point to the defendant's September 6, 1994 letter as written proof of waiver. (Pl. Brief Exh. A. *Cf.* D. Brief Exh. J.) Plaintiffs admit that the letter itself clearly informed them (again) that they had not submitted a proof of loss and that Omaha was closing the file. They argue, however, that the letter's enclosures—in particular a computer printout of an "Examiner Notepad Screen"—led plaintiffs to believe the opposite and established a waiver by the defendant.

In fact, the enclosure to the September 6 letter contains information *consistent* with its cover letter and reflects that (1) plaintiffs never submitted a proof of loss, and (2) the insurer therefore closed plaintiffs' file "due to lack of interest by [the] ins[ure]d." (Pl. Exh. A.) Moreover, the regulations provide specifically that "no provision [of an SFIP such as the plaintiffs'] shall be altered, varied, or waived other than by ... express written consent ... through the issuance of an appropriate amendatory endorsement...." 44 C.F.R. § 61.13(d). The policy itself, too, permits a waiver of the proof of loss requirement only if the insured signs and swears to a detailed adjuster's report of the loss and damages. (*See* D. Brief, Exh. C, at 7.) This

plaintiffs never did. Further, the enclosure to defendant's September 6, 1994 letter cannot reasonably represent the type of express written consent or "amendatory endorsement" that the law requires. Finally, the court notes that in each of defendant's letters to plaintiffs reminding them of their obligation to file a proof of loss, Omaha expressly advised plaintiffs that it was not waiving any rights or defenses under the policy.

### D. Estoppel

Like the waiver argument, plaintiffs' reliance on principles of estoppel fails. Again, courts generally do not permit claims of estoppel to be raised against the government unless the party alleges "affirmative, serious misconduct by a government agent that was reasonably relied upon to a party's detriment." *Diamond v. FEMA,* 689 F.Supp. 163, 169 (E.D.N.Y.1988) (citing *Heckler v. Community Health Servs.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1983)); *Schumitzki,* 656 F.Supp. at 434 (citations omitted).[6] Even where a court allows a litigant to assert estoppel, however, that litigant must first satisfy the traditional elements of estoppel. To that end, the plaintiffs must show that (1) the defendant knew the true facts (that the policy required timely submission of a proof of loss); (2) the defendant intended that the plaintiffs would rely on and act upon the defendant's acts or representations to the contrary; (3) they did not know the true facts (that the policy required timely submission of a proof of loss); and (4) they reasonably relied to their detriment on defendant's acts or representations. *See Maloney v. FEMA,* Civ. A. No. 96–1879, 1996 WL 626325, * 3 (E.D.La. Oct. 24, 1996); *McCrary v. FEMA,* 642 F.Supp. 544, 547 (E.D.N.C. 1986); Restatement (Second) of Torts § 894(1) (1979).

■ Plaintiffs cannot satisfy the third part of the traditional estoppel test; that is, they cannot demonstrate that they did not know that the insurance policy required an insured to file a proof of loss statement within 60 days of the date of loss. The evidence be-

---

6. The court does not suggest that Omaha is an agent of the federal government. *Cf.* 44 C.F.R. § 62.23(g) (1997).

fore the court demonstrates clearly that defendant and defendant's adjuster notified plaintiffs repeatedly through written correspondence of their obligations under the insurance policy. Regardless of other oral advice to the contrary, plaintiffs should have been aware of the actual requirements of the policy. Furthermore, both the plain language of the policy itself as well as defendant's repeated reminders render plaintiffs' reliance on the alleged oral assurances unreasonable. *Schumitzki,* 656 F.Supp. at 435. Thus, plaintiff's argument regarding estoppel fails as a matter of law. *See Serbin,* 96 F.3d at 69 n. 2 (quotation omitted) (non-movant must establish sufficiently every element essential to his case).[7]

As a final note, the court recognizes that Congress established the National Flood Insurance Program to help alleviate the kind of economic hardship caused by flood damage suffered by plaintiffs. By involving the private insurance industry in the implementation of a federal insurance program, Congress made available insurance coverage that potential insureds otherwise could not obtain easily from private carriers. *See* 42 U.S.C.A. § 4001(b) (West 1994) ("many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection *on reasonable terms and conditions* ") (emphasis added). Congress did not, however, provide for unconditional coverage. By upholding defendant's policy-based defense in this instance, the court does not violate the purpose of the NFIP; rather, it merely enforces the terms and conditions of a federal insurance program made available to parties such as plaintiffs who, but for their persistent noncompliance with the policy's clear provisions, may very well have benefited from the NFIP as envisioned by its creators.

## III. CONCLUSION

For the reasons set forth, the court finds that there are no genuine issues of material fact as to plaintiffs' failure to comply with the

proof of loss requirement of their flood insurance policy. The court finds further that (1) the lack of a formal proof of loss statement bars plaintiffs' present action as a matter of law, and (2) plaintiffs cannot assert claims of waiver or estoppel against the defendant as a matter of law.

The court will grant defendant's Motion for Summary Judgment. The court will enter an appropriate order.

### ORDER

THIS MATTER having come before the court on Defendant The Omaha Property and Insurance Company's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56;

The court having reviewed the record and the submissions of the parties;

For the reasons set forth in the court's opinion of this date;

IT IS this 3rd day of February, 1997 HEREBY

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

No costs.

---

7. Plaintiffs' reliance on the highly fact-specific holding in *Meister Bros. Inc. v. Macy,* 674 F.2d 1174 (7th Cir.1982) is misplaced. That court permitted the insureds to assert an estoppel claim against the insurer, but did so on the basis of a record that reflected detailed reports containing all of the information which the insured would have included in a proof of loss statement. Such a record is conspicuously absent in this case and, therefore, cannot support plaintiffs' position.